# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL NO. 4:17-CR-394 |
| v. | : (Chief Judge Conner) |
| XIAO WU ZHOU and CHUANZE XU, | : |
| Defendants | : |

## MEMORANDUM

Defendants Xiao Wu Zhou ("Zhou") and Chuanze Xu ("Xu") move the court to suppress evidence seized during a traffic stop on October 31, 2017. (Doc. 32). The court will deny defendants' motion.

## I. Findings of Fact[1]

Trooper Jeremy Hoy ("Trooper Hoy") is a Pennsylvania State Police trooper assigned to the Central Shield Unit of the Bureau of Criminal Investigation's Drug Law Enforcement Division. (Tr. 3:15-18; Ex. 5 at 1). On the afternoon of October 31, 2017, Trooper Hoy was stationed in his marked patrol car on the median of Interstate 80 near mile marker 153.8. (Tr. at 2:22-23, 3:19-4:4). Trooper Hoy noticed a U-Haul truck traveling eastbound "slower than the flow of traffic" and observed the driver with his hands rigidly "locked on the [steering] wheel at [] the [ten] and [two] positions staring straight ahead." (Id. at 8:25-9:15, 70:7-12). He followed the

---

[1] The above factual narrative derives from testimonial evidence adduced during the suppression hearing in this matter, together with four exhibits admitted into evidence. The court reporter has provided the court with a transcript of the March 2, 2018 suppression hearing. Citations thereto are abbreviated as "Tr." Citations to hearing exhibits are abbreviated as "Ex."

U-Haul truck and witnessed it travel over the white fog line separating the right lane from the shoulder three times near exit 158. (Id. at 10:21-11:16).

Trooper Hoy initiated a traffic stop at approximately 2:25 p.m. by activating his lights and siren, causing the patrol car's surveillance system to begin recording. (Id. at 15:3-16:7; Ex. 2 at 3). He approached the truck on the passenger side and requested the U-Haul rental agreement and identification from both driver and passenger. (Tr. 25:11-15, 15:22-26:2, 26:8-18; Ex. 1 at 14:26). Trooper Hoy also explained the reason for the stop—crossing the fog line (a traffic infraction under 75 PA. CONS. STAT. § 3309) and to check that defendants were "okay to drive." (Tr. 25:18-23, 26:19-24, 58:1-8; Ex. 1 at 14:26). Trooper Hoy testified that he was concerned the driver might be falling asleep or intoxicated. (Tr. 26:23-27:2). The driver, Zhou, spoke limited English and the passenger, Xu, frequently translated and explained things to Zhou in Mandarin Chinese. (Id. at 20:19-21:4, 27:3-9; Ex. 1 at 14:31). Before returning to his patrol car, Trooper Hoy observed various items in the U-Haul cabin indicative of "hard travel," to wit: four cell phones, cigarette cartons, energy drinks, fast food containers, two small book bags, and some blankets.[2] (Tr. 27:10-19, 28:14-30:8; Ex. 2 at 9-10).

Xu agreed to accompany Trooper Hoy to the patrol car to run the licenses and registration and receive any citation Trooper Hoy might issue. (Tr. 32:24-

---

[2] Trooper Hoy defined his use of the term "hard travel" as driving for long periods of time without stopping overnight, sleeping in one's vehicle and alternating drivers, and using energy drinks to stay awake. (Tr. 27:16-18, 30:9-10, 30:16-19). Trooper Hoy testified that individuals trafficking in illegal drugs often engage in "hard travel" because they want to move the contraband quickly and prefer not to "rent a hotel room and leave [the drugs] alone." (Id. at 30:11-15).

33:11). Xu consented to a pat down for weapons upon exiting the vehicle—none were found. (Id. at 50:11-51:4). Zhou and Xu each possessed a New York state driver's license. (Id. at 34:9-35:7; Ex. 3). The U-Haul rental agreement indicated that defendants rented the vehicle in Antioch, California; that the drop off destination was Flushing, New York; and that defendants paid $2,500 for the rental. (Tr. 27:18-19, 35:12-14, 37:10-18, 38:10-11). As Trooper Hoy ran the licenses and vehicle registration, he and Xu conversed about defendants' travel plans. (Id. at 35:8-14; see Ex. 1 at 14:28-31). Xu stated that he and Zhou were moving Zhou's mother from California to New York and that they had flown to California together several days prior. (Tr. 35:23-36:11; Ex. 1 at 14:28-30).

When Trooper Hoy inquired about Zhou's mother and her California home, Xu volunteered that Zhou's mother lived in a two-story, single family house and would join defendants in New York in a week. (Tr. 39:3-9; Ex. 1 at 14:29). Xu explained that defendants rented a U-Haul because Hertz did not have a vehicle available. (Tr. 38:5-9; Ex. 1 at 14:30). Trooper Hoy testified that the U-Haul appeared far too small to move a two-story, single family house. (Tr. 39:10-16). When asked what was in the cargo portion of the U-Haul truck, Xu responded that there were five "briefcases" containing bed sheets. (Id. at 40:3-20; Ex. 1 at 14:33-34). Throughout the conversation, Trooper Hoy observed the "carotid artery in [Xu's] neck pulsating" indicating "continued . . . or even increasing nervousness" beyond the typical driver's normal reaction to a traffic stop. (Tr. 41:9-21).

Trooper Hoy asked Xu to wait by the patrol car as he confirmed Zhou's address. (Id. at 42:8-13). As Trooper Hoy approached the U-Haul, Zhou motioned

3

for Trooper Hoy to open the cab door to speak with him. (Id. at 42:14-21). Using a Google translate app, Trooper Hoy confirmed Zhou's address on the license. (Id. at 42:22-43:3). Zhou answered additional questions, stating that he and Xu traveled from Antioch, California, and were moving. (Id. at 43:4-7; Ex. 1 at 14:36). Trooper Hoy testified that Zhou indicated that he drove to California initially, contradicting Xu's statement that the pair flew together. (Tr. 43:7-14; Ex. 1 at 14:37-38). Trooper Hoy observed that Zhou remained "very rigid" and "[a]lmost frozen in his seat" throughout the conversation. (Tr. 43:14-16).

Trooper Hoy asked Zhou for consent to search the U-Haul. (Id. at 43:16-18). In response to this request, Zhou immediately became "very excited in his voice," "very animated," and began "bounc[ing] willing[ly] in his seat." (Id. at 45:2-4). Trooper Hoy escorted Zhou from the U-Haul cabin to the patrol car. (Id. at 45:14-22). Zhou also consented to a pat down for weapons upon exiting the vehicle, and none were found. (Id. at 50:11-51:4). Trooper Hoy asked Xu to translate the request for consent to ensure Zhou understood and to obtain a clear answer from him. (Id. at 45:17-46:3). After Xu translated the request, Zhou denied Trooper Hoy consent to search the cargo portion of the U-Haul. (Id. at 46:1-17; Ex. 1 at 14:40).

Trooper Hoy testified that he sought consent to search because he developed reasonable suspicion throughout the traffic stop that criminal activity was occurring. (Tr. 43:19-23). Trooper Hoy pointed to the following evidence in support of his assertion: defendants' undue nervousness displayed throughout the stop; discrepancies in defendants' explanations of their past and present travel plans; the mismatch between the scope of the purported move and the U-Haul truck's size and

4

rental cost; Xu's description of the items located in truck's cargo area; evidence of hard travel in the U-Haul cabin; defendants' minimal personal belongings and lack of luggage for a cross country trip; the presence of four cellular phones; and the point of origin and destination of defendants' travel.[3] (Id. at 43:19-44:22, 54:1-11, 98:3-6; Ex. 1 at 15:00-03; Ex. 2 at 9). Trooper Hoy requested a canine unit to conduct a dog sniff at approximately 2:41 p.m. (Tr. 18:11-16, 46:18-24, 47:8-12; Ex. 1 at 14:41). The unit arrived at approximately 3:11 p.m., and, following a perimeter walk of the U-Haul, the canine indicated the presence of drugs in the truck's right rear cargo area. (Tr. 47:16-48:7; Ex. 1 at 15:11, 15:15).

Trooper Hoy opened the cargo area door and discovered five suitcases locked at the zippers, nine large plastic covered bags, and thirty-three cardboard boxes taped at the seams. (Tr. 48:14-22, 61:15-18; Ex. 1 at 15:15; Ex. 2 at 12). Trooper Hoy cut the seams off one box and found "vacuum sealed packages of marijuana" inside. (Tr. 48:22-23, 49:8-18; Ex. 1 at 15:15-16). Following discovery of the marijuana, Trooper Hoy placed defendants under arrest. (Tr. 49:19-21; Ex. 1 at 15:16).

## II. Procedural History

A federal grand jury returned a two count indictment against defendants on December 14, 2017. (Doc. 5). The indictment charges Zhou and Xu with one count of conspiracy to distribute marijuana in violation of 21 U.S.C. § 846 (Count 1); and one count of distribution and possession with intent to distribute marijuana in

---

[3] Based on his personal experience and training, Trooper Hoy testified that Flushing, New York, is a frequent contraband destination. (Id. at 37:15-23, 98:24-25). He further testified that California is "a legalized marijuana state" and thus an "origination point" for marijuana coming to the east coast. (Id. 54:12-20, 98:21-23).

5

violation of 18 U.S.C. §§ 841(a)(1) and 2 (Count 2).  (Doc. 5).  Zhou and Xu each pled not guilty to both counts.  (Doc. 15).

On January 30, 2018, Zhou and Xu moved to suppress all evidence seized during the October 31, 2017 traffic stop.  (Doc. 32).  We convened a suppression hearing on March 2, 2018.  The motion is fully briefed and ripe for disposition.

### III. Discussion

Defendants raise two arguments in their motion to suppress.  *First*, defendants contend that Trooper Hoy lacked probable cause that defendants committed a traffic violation to justify the initial stop.  *Second*, they assert that the duration of the traffic stop and resulting interrogation were not reasonably related to the stop's purpose and that Trooper Hoy lacked reasonable suspicion that defendants had committed a crime when he called for a dog sniff.  We will address these arguments *seriatim*.

#### A. Initial Traffic Stop

When an officer has reasonable suspicion to believe that a traffic violation has occurred, the officer may stop the vehicle.  Heien v. North Carolina, 135 S. Ct. 530, 536 (2014); United States v. Delfin-Colina, 464 F.3d 392, 396-97 (3d Cir. 2006) (citing Whren v. United States, 517 U.S. 806, 810 (1996)).  Pretextual motivations are irrelevant so long as the officer witnessed "*any* technical violation of a traffic code." United States v. Mosley, 454 F.3d 249, 252 (3d Cir. 2006) (emphasis added) (citations omitted).  Evidence constitutionally obtained under federal law is admissible in federal court even if state law may not otherwise authorize the search or seizure. See United States v. Stiver, 9 F.3d 298, 300 (3d Cir. 1993) (quoting United States v.

6

Rickus, 737 F.2d 360, 363-64 (3d Cir. 1984)). For Fourth Amendment purposes, a traffic stop is a seizure of both the driver and any occupants of a vehicle. Brendlin v. California, 551 U.S. 249, 257 (2007); Delaware v. Prouse, 440 U.S. 648, 653 (1979). Searches and seizures based on mistakes of fact or law can be objectively reasonable. Heien, 135 S. Ct. at 536, 539.

Trooper Hoy had reasonable suspicion that defendants committed a traffic violation. Under Pennsylvania law, a vehicle must be driven "as nearly as practicable entirely within a single lane." 75 PA. CONS. STAT. § 3309(1). Section 3309 also prohibits unsafe lane changes. Id. Trooper Hoy witnessed the U-Haul truck cross the white fog line separating the right lane from the highway shoulder three separate times. (Tr. 10:21-11:16). He testified that a vehicle leaving the designated roadway is "one of the number one causes for crashes" and that there can be disabled vehicles and debris on the shoulder to the right of the fog line. (Id. at 73:7-17). In addition, Trooper Hoy observed the U-Haul traveling slower than the flow of traffic on the highway and noted that Zhou was driving rigidly and staring straight ahead. (Id. at 8:25-9:15, 70:7-12). Trooper Hoy articulated to defendants that he initiated the traffic stop because they crossed the fog line several times and out of concern that Zhou might be falling asleep or intoxicated. (Id. at 25:11-27:2; Ex. 1 at 14:26). We find that Trooper Hoy had a reasonable basis to conduct a brief, investigatory stop of defendants based on his observations.

Defendants argue that crossing the fog line three times does not establish probable cause for a violation of Section 3309, negating Trooper Hoy's stated basis for the investigatory stop. (Doc. 32-1 at 5). Defendants also posit that Pennsylvania

7

case law dictates that such momentary traffic infractions do not rise to the level of a statutory violation. (Id. at 6-7 (citing Commonwealth v. Gleason, 785 A.2d 983, 989 (Pa. 2001), superseded by statute as stated in Commonwealth v. Holmes, 14 A.3d 89, 94 n.12 (Pa. 2011))). Preliminarily, federal law requires only that Trooper Hoy had reasonable suspicion that a traffic violation occurred. See Heien, 135 S. Ct. at 536. Moreover, to the extent Trooper Hoy was mistaken as to whether a traffic violation occurred, that mistake was reasonable. Trooper Hoy testified that he believed a single movement over the fog line does not constitute a violation, but that a driver violates Section 3309 when a vehicle crosses the fog line multiple times. (Tr. 82:14-83:17). We credit Trooper Hoy's explanation and find any ostensible mistake of law to be reasonable.

Assuming *arguendo* that Trooper Hoy's mistake was unreasonable, the investigative stop was still lawful. In addition to the perceived violation of Section 3309, Trooper Hoy articulated several facts suggesting that, at the time of the stop, Zhou might be intoxicated or too tired to drive. (Id. at 8:25-9:15, 10:21-11:16, 25:11-27:2, 70:7-12, 73:7-17). Driving under the influence is a Pennsylvania Vehicle Code violation requiring further investigation. See 75 PA. CONS. STAT. § 3802; see also Commonwealth v. Haines, 166 A.3d 449, 455 (Pa. Super. Ct. 2017), appeal denied, 176 A.3d 333 (Pa. 2017) (quoting Commonwealth v. Salter, 121 A.3d 987, 993 (Pa. Super. Ct. 2015)). We find Trooper Hoy lawfully initiated an investigative traffic stop based on reasonable suspicion that defendants violated Pennsylvania law.

### B. Reasonable Articulable Suspicion

A police officer may broaden a lawful traffic stop beyond the scope of the original reason for the encounter if he or she develops "a reasonable, articulable suspicion of criminal activity." Mosley, 454 F.3d at 252 (quoting United States v. Givan, 320 F.3d 452, 458 (3d Cir. 2003)); see also Terry v. Ohio, 392 U.S. 1, 21 (1968). Reasonable suspicion is "a particularized and objective basis" that the person stopped is engaged in criminal activity based on the "totality of the circumstances." United States v. Brown, 765 F.3d 278, 290 (3d Cir. 2014) (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)). Reasonable suspicion requires more than a "hunch" but "considerably less than a preponderance of the evidence." Id. (quoting Illinois v. Wardlow, 528 U.S. 119, 123 (2000)). An objectively reasonable officer may draw on his or her own "experience and specialized training to make inferences from and deductions about the cumulative evidence available to them." Id. (quoting Arvizu, 534 U.S. at 273); United States v. Thompson, 772 F.3d 752, 758 (3d Cir. 2014).

#### 1. *Duration of the Investigative Traffic Stop*

Defendants first argue that Trooper Hoy extended the duration of the investigative stop beyond the time necessary to investigate the possible violations. (Doc. 32-1 at 9-10). Specifically, defendants aver that Trooper Hoy failed to confine his inquiries to subjects related to whether or not defendants were okay to continue traveling in light of their fog line infractions. (Id.) We disagree. Following a lawful investigative stop, an officer may, *inter alia*, visually inspect the vehicle's interior, check driver and passenger credentials, and ask the occupants questions. Mosley, 454 F.3d at 252; see also Rodriguez v. United States, 135 S. Ct. 1609, 1615 (2015). An

9

officer's questions about subjects unrelated to the reason for the traffic stop are permissible "so long as those inquiries do not measurably extend the duration of the stop." Arizona v. Johnson, 555 U.S. 323, 333 (2009).

Trooper Hoy did not impermissibly extend the investigative stop. Trooper Hoy's initial contact with defendants and collection of necessary paperwork took only three minutes, after which Trooper Hoy spoke with Xu at the patrol car for approximately seven minutes. (Ex. 1 at 14:25-34). Trooper Hoy testified that he ran the registration of the vehicle and defendants' driver's licenses as well as a criminal history check on each defendant. (Tr. 33:21-24). He clarified that such checks can sometimes "take a while" depending on connectivity and the quality of the state system being utilized. (Id. at 33:25-34:5). As these registration and background checks ran, Trooper Hoy asked questions relevant to the physical fitness of defendants to drive. Specifically, Trooper Hoy inquired as to defendants' travel plans, the length of time defendants had been driving that day, and when they last slept. (Ex. 1 at 14:32-33). We find that the initial ten-minute portion of the investigatory stop was of reasonable duration.

Trooper Hoy developed reasonable suspicion speaking with Xu that defendants may be engaged in the illegal transportation of narcotics. Xu's explanation for the trip—to move Zhou's mother from her two-story, single family house in California to New York—stood in contradistinction to the size of the U-Haul truck and the mere five briefcases of bed sheets purportedly in the cargo area. (Tr. 39:10-16, 43:24-44:8; Ex. 1 at 15:00-03). The evidence of hard travel located in the U-Haul cabin and Xu's heightened level of stress, combined with defendants'

10

point of origin and destination, further contributed to Trooper Hoy's suspicion that defendants may be engaged in criminal activity. (Tr. 43:19-23, 44:8-22, 54:12-20; Ex. 1 at 15:00-03). Based on these observations, Trooper Hoy extended the stop an additional six minutes to ask Zhou several questions using a translation app and then seek consent to search the U-Haul's cargo area. (Ex. 1 at 14:35-40). We find, under the totality of the circumstances, that Trooper Hoy possessed reasonable suspicion justifying continuation of the traffic stop.

### 2. *Dog Sniff*

Defendants also contend that Trooper Hoy lacked reasonable suspicion that defendants committed a crime when he requested the canine unit for a dog sniff. (Doc. 32-1 at 10-12). Specifically, defendants posit that no "serious factor" justified extending the stop to include a dog sniff, such as an outstanding warrant. (Id. at 11-12). As a member of the Drug Law Enforcement Division, Trooper Hoy received hundreds of hours of specialized training focused on criminal interdiction and has participated in approximately 150 misdemeanor and felony arrests. (Tr. 4:14-5:8). We find Trooper Hoy's testimony of events to be credible and corroborated by the surveillance video of the traffic stop.

Based on the totality of circumstances and his experience and specialized training, Trooper Hoy articulated sufficient factual circumstances in support of his reasonable suspicion that defendants were engaged in unlawful transportation of narcotics. See Brown, 765 F.3d at 290; Thompson, 772 F.3d at 758-60. Defendants were engaged in hard travel along a frequent drug trafficking corridor between California and Flushing, New York, and expressed a heightened level of anxiety

11

compared to the normal driver during a traffic stop. (Tr. 43:19-23, 44:8-22, 54:12-20; Ex. 1 at 15:00-03). Xu's explanation of the trip's purpose contrasted starkly with the size of the U-Haul truck and the alleged contents thereof, and defendants were unable to convey matching stories regarding same. (Tr. 36:8-11, 39:10-16, 43:7-14, 43:24-44:8; Ex. 1 at 14:29-30, 14:37-38, 15:00-03). We find that Trooper Hoy had reasonable suspicion to justify extending the traffic stop to call for the canine unit.

## IV. <u>Conclusion</u>

Defendants' motion (Doc. 32) will be denied. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: April 18, 2018